IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02318-PAB-KLM

PAULA FRY,

    Plaintiff,

v.

CITY OF NORTHGLENN, COLORADO,

    Defendants.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Motion in Limine and/or for Protective Order** [#46][1] (the "Motion"). Defendant filed a Response [#52] in opposition to the Motion, and Plaintiff filed a Reply [#60]. The Court has reviewed the Motion [#46], the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#46] is **DENIED**.

**I. Background**

Defendant City of Northglenn, Colorado ("Northglenn") is a home rule municipality pursuant to Article XX, § 6 of the Colorado Constitution, and the Northglenn Police Department ("NPD") is an agency of Defendant Northglenn. *Compl.* [#1] at 3. As a home rule municipality, Northglenn is a "public entity" as used in Title II of the Americans with

---

[1] "[#46]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

Disabilities Act ("ADA"). *See* 42 U.S.C. § 12131 (2012). Plaintiff is deaf and her primary language is American Sign Language ("ASL"). *Compl.* [#1] at 1. Plaintiff was kidnapped and raped on September 20, 2014. *Id.* An ensuing police investigation was conducted by the NPD, in which Defendant did not provide Plaintiff with an ASL interpreter, in spite of her requests for an interpreter. *Id.* As a result of Defendant's unwillingness to provide Plaintiff with an ASL interpreter during the police investigation, Plaintiff filed this action pursuant to Title II of the ADA (42 U.S.C. § 12131), Section 503 of the Rehabilitation Act (29 U.S.C. § 794), and the Colorado Anti-Discrimination Act (Colo. Rev. Stat. § 24–34–601). *Id.* at 9-11. Plaintiff seeks injunctive relief and compensatory damages. *Id.* at 13.

Defendant disclosed Plaintiff's thirteen-year-old son ("DF") as a potential witness on May 10, 2017, to seek testimony regarding Plaintiff's communication capacities. *Response* [#52] at 1. Plaintiff's Motion [#46] seeks a ruling by this Court or a Fed. R. Civ. P. 26(c)(1) protective order to prevent Defendant from obtaining DF's testimony. *Motion* [#46] at 1. In support of Plaintiff's Motion [#46], Plaintiff first asserts that disclosing DF as a witness runs contrary to the intent of the ADA Implementing Regulations and the Department of Justice's guidance thereto. *Id.* at 5. Second, Plaintiff asserts that "DF should be excluded as a witness because he can offer no relevant evidence." *Id.* at 7. Finally, Plaintiff contends that it would be appropriate for the Court issue a protective order forbidding the disclosure of DF, as Defendant's disclosure of DF is "annoying, embarrassing, oppressive, harassing, and deeply traumatic for both DF and Plaintiff." *Id.* at 8. In response, Defendant asserts that the ADA Implementing Regulations do not forbid DF's testimony, that DF's testimony is highly relevant to resolving the issues in this lawsuit, and that Plaintiff has failed to provide factual or legal authority to support the issuance of a protective order.

*Response* [#52] at 11.

## II. Analysis

**A.      Title II Implementing Regulations**

Plaintiff contends that it would be inappropriate for DF to testify in his mother's case pursuant to 28 C.F.R. § 35.160(c)(3). *See Motion* [#46] at 6. 28 C.F.R. § 35.160(c)(3) explicitly prohibits a minor child from being used by a public entity to facilitate communication with a disabled individual. *Id.* at 6 (quoting 28 C.F.R. § 35.160(c)(3)). Plaintiff acknowledges that "NPD is not asking DF to interpret for his mother, it is asking him to testify against her about [her] communications preferences and abilities." *Id.* However, Plaintiff contends that because the communications at issue relate to the investigation of Plaintiff's kidnapping and rape, it is inappropriate for DF to testify regarding Plaintiff's communication preferences and abilities. *Id.* at 7. In response, Defendant asserts that "these situations are inappropriate for children to the extent a child is 'used to provide effective communication' for a deaf individual who recently suffered a traumatic event . . . [but] [n]one of the authorities to which Plaintiff refers goes so far as to support Plaintiff's assertion that DF may not be called as a witness in this case." *Response* [#52] at 3-4.

The language of 28 C.F.R. § 35.160(c)(3) requires that "[a] public entity shall not rely on a minor child to interpret or facilitate communication, except in an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available." 28 C.F.R. § 35.160(c)(3). This language pertains to instances in which a minor child is used to "interpret or facilitate communication," but is silent regarding

instances in which a minor child is providing evidentiary testimony. 28 C.F.R. § 35.160. Because 28 C.F.R. § 35.160(c)(3) simply does not pertain to child testimony regarding the communications capacity of disabled individuals, it cannot be construed as forbidding such testimony. Therefore, 28 C.F.R. § 35.160(c)(3) does not provide a basis to bar Defendant from disclosing DF as a potential witness at trial.

Accordingly, the Court finds that 28 C.F.R. § 35.160 does not curtail Defendant's right to disclose DF as a potential witness, and therefore the Motion [#46] is **denied** with respect to this argument.

### B. Relevance of DF's Testimony

Plaintiff also challenges the relevance of DF's potential testimony. *Motion* [#46] at 7. Specifically, Plaintiff states that "[t]he way that DF communicates with his mother will shed no light on the question of whether NPD's communications with Plaintiff about her rape and kidnapping and their investigation were 'as effective as those with others.'" *Id.* (quoting 28 C.F.R. § 35.160(a)(1)). In response, Defendant contends that DF's testimony would go to the "heart of these issues" by demonstrating whether DF is able to communicate with his mother notwithstanding that he does not use ASL. *Response* [#52] at 5. The testimony would, Defendant argues, have "at least minimal bearing on the issue of whether NPD's communication with Plaintiff without a certified ASL interpreter . . . was as effective as it would have been if Plaintiff was not deaf." *Id.*

"A public entity shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). To do so, a public

entity should take steps to ensure that appropriate auxiliary aids and services are provided when necessary. *Ulibarri v. City & Cty. of Denver*, 742 F. Supp. 2d 1192, 1214 (10th Cir. 2010). "In determining what type of auxiliary aid and service is necessary, a public entity shall give primary consideration to the requests of the individuals with disabilities." 28 C.F.R. § 35.160(b)(2). Plaintiff asserts that "Defendant had an obligation to communicate effectively with [Plaintiff], no matter what methods of communication she may be forced to use in her day-to-day life, and above all give 'primary consideration' in her requests for auxiliary aids and services." *Reply* [#60] at 6. By relying heavily on the language of 28 C.F.R. § 35.160, which states that "a public entity shall give primary consideration to the requests of individuals with disabilities," Plaintiff seemingly suggests that any failure to provide an auxiliary aid when requested is a per se violation of the regulation. *Motion* [#46] at 6. The *Ulibarri* court noted, however, that a disabled individual's choice of accommodation shall be honored unless defendant can show that another effective means of communication exists. *Ulibarri*, 742 F. Supp. 2d at 1215. Therefore, the central question is whether the methods of communication utilized by Defendant were "as effective as [Plaintiff's] communications with others," and not whether Defendant granted Plaintiff's exact requests. *Id.* (quoting 28 C.F.R. § 35.160(a)(1)) (concluding that writing was an effective means of communication between prison guards and a deaf inmate during the booking process).

Because the pertinent question is whether Plaintiff and Defendant communicated as effectively as Defendant communicated with hearing individuals, DF's testimony is clearly relevant. Pursuant to Fed. R. Evid. 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b) the fact is of consequence in determining the action." DF does not use ASL. *Response* [#52] at 5. Therefore, the testimony of DF will likely have a tendency to make a fact at issue more or less probable, as it may shed light on Plaintiff's communication abilities with individuals who do not use ASL. Because Plaintiff's relative ability to communicate with others is a fact of consequence in determining this action, the testimony evidence is clearly relevant pursuant to Fed. R. Evid. 402.[2]

Accordingly, the Court finds that Defendant's disclosure of DF may not be stricken for lack of relevance, and therefore the Motion [#46] is **denied** with respect to this argument.

## C. Fed. R. Civ. P. 26(c)(1) Protection Order

Finally, Plaintiff contends that it would be appropriate for the Court to issue a protective order "forbidding the disclosure of DF, forbidding the Defendant from contacting him, and forbidding his appearance at trial." *Motion* [#46] at 8-9. In support, Plaintiff states that Defendant's decision to disclose DF as a potential witness is "annoying, embarrassing, oppressive, harassing, and deeply traumatic both for DF and Plaintiff." *Id.* at 8. Defendant

---

[2] Plaintiff further asserts that DF's testimony "would amount to speculation and be inadmissible" pursuant to Fed. R. Evid. 701(b). Fed. R. Evid. 701(b) requires that non-expert "testimony in the form of opinions or inferences is limited to those opinions or inferences which are . . . (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Plaintiff's argument appears to be based on the assumption that DF will only be asked about his mother's communications with police during their encounters at issue in the case, where DF was not present. Defendant suggests, instead, that DF can offer testimony on the general ability of his mother to communicate with individuals who do not use ASL. Such testimony would be "helpful...to the determination of a fact in issue," which is whether Defendant's communications with Plaintiff were as effective as communications with others. Part of that concept necessarily involves whether Plaintiff understood what Defendant was attempting to communicate, and whether her conduct manifested such understanding. DF's testimony about her general communications patterns and skills will be helpful on that issue, and may also aid in the necessary assessment of Plaintiff's credibility.

disputes the appropriateness of a protective order on a number of grounds, including ambiguity regarding what portion of DF's potential testimony requires protection, whether Plaintiff has standing to evoke a protective order on DF's behalf, and an insufficient explanation for why the protective order is appropriate. *Response* [#52] at 8.

Pursuant to Fed. R. Civ. P. 26(c)(1), "[t]he Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "However, [the good cause] standard is not satisfied by conclusory statements. Rather, the party seeking a protective order must show that disclosure will result in a clearly defined and serious injury to the moving party." *Klesh & Co. Ltd. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D. Colo. 2003). Because Plaintiff's Motion [#46] asserts only conclusory statements alleging that the Defendant's use of DF as a witness is "annoying, embarrassing, oppressive, harassing, and deeply traumatic for both DF and Plaintiff," but does not provide further justification, Plaintiff has failed to provide a sufficient showing of good cause to justify the entrance of a protective order. Moreover, Defendant has explicitly affirmed that it has no intention of eliciting testimony from DF about custody matters or the criminal case that arose from Plaintiff's kidnapping and rape, "unless Plaintiff makes them relevant." *Response* [#52] at 9-10. Under these circumstances, the need for a protective order is particularly unlikely.

Accordingly, the Court finds that Plaintiff has provided an insufficient showing to support a issuance of a protective order, and therefore the Motion [#46] is **denied** with respect to this argument.

### III. Conclusion

For the foregoing reasons, the Motion [#46] is **DENIED**. However,

IT IS HEREBY **ORDERED** that Defendant shall seek only limited testimony of DF to ascertain how he communicates with his mother, whether he feels he can effectively communicate with his mother, and his knowledge of whether his mother generally uses ASL, another form of sign language, or some other form(s) altogether. *See Response* [#52] at 4. Defendant shall not seek any other testimony from DF, or otherwise expose DF to information regarding Plaintiff's kidnapping and rape, unless otherwise permitted to do so under the Federal Rules of Evidence.

Dated: October 5, 2017

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge